RECEIVED CRL

3/1/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**1:21-CV-01167**

| | | |
|---|---|---|
| G.P., a minor; J.P., a minor, and VANESSA WEREKO, in her individual capacity and as Mother and next friend for G.P., and J.P., | ) ) ) | |
| | ) | Case No. |
| Plaintiffs, | ) | |
| v. | ) | Hon. |
| | ) | |
| THE HON. DAVID E. HARACZ, Associate Judge of the Circuit Court of Cook County, in his official capacity, | ) ) ) | Jury demand requested for Count IV |
| | ) | |
| BRADLEY R. TROWBRIDGE, Executive Director of Safe Travels Chicago, LLC, Attorney-At Law | ) ) ) | JUDGE ROWLAND |
| | ) | MAGISTRATE JUDGE COLE |
| SAFE TRAVELS CHICAGO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND COMPENSATORY RELIEF

**I.     INTRODUCTORY STATEMENT**

1.   G.P. and J.P., two minor children, and their mother Vanessa Wereko ("Vanessa") have had their Constitutionally-protected mother-child relationship completely infringed since September 9, 2019, despite the Illinois Appellate Court finding Vanessa was never found to be an unfit parent.

2.   Vanessa is the Respondent in an ongoing state dissolution of marriage and custody proceeding in Cook County Circuit Court's Domestic Relations Division, in which The HON. DAVID E. HARACZ ("David Haracz") is assigned to the case. This case

1

was initiated by Francesco Potenza on September 28, 2016. *In re Marriage of Potenza*, 2016 D 009029, 2020 IL App (1st) 192454-U.

3. On September 9, 2019, David Haracz granted a plenary order of protection that transferred custody of G.P. and J.P. to Francesco Potenza, on a petition that falsely alleged Vanessa was concealing G.P. and J.P. out-of-state and had withheld visitation pursuant to an Allocation Judgment. Francesco Potenza relocated to Florida on or about May 2018 and then relocated back to Illinois in July 2019 but did not inform Vanessa of either move. Before his relocation to Florida and after, Vanessa would appear at the court-appointed drop-off location in Highland Park, Illinois, 22 miles round-trip from her domicile in Vernon Hills, Illinois, and Francesco did not appear. After repeated no-shows, Vanessa stopped appearing at the drop-off location. When Francesco relocated back from Florida, he did not inform Vanessa and allegedly went to the drop-off location in July 2019. Francesco then started filing "emergency" motions while *pro se*, without notice to Vanessa in the circuit court, and then an emergency *ex parte* petition for order of protection on August, 1, 2019, a month later. This was a deliberate "setup" by Francesco.

4. Francesco's petition for order of protection did not seek a restriction on Vanessa's parenting time, but requested a "permanent" transfer of custody. On September 9, 2019, in a proceeding on the record, David Haracz imposed a restriction of supervised parenting time with SAFE TRAVELS CHICAGO, LLC *sua sponte*. This meant that if Vanessa could see G.P. and J.P. at all, it had to be facilitated by SAFE TRAVELS CHICAGO, LLC on their terms and conditions, costing Vanessa thousands of dollars.

5. Illinois appellate courts have found such *sua sponte* orders, in which circuit court judges issue orders without a corresponding request for such relief, exceed the circuit court's jurisdiction and are void. These orders violate a party's procedural due process rights to notice and to be heard.

6. On December 31, 2020, the Illinois Appellate Court, First District, vacated the September 9, 2019 plenary order of protection, as prosecuted by Vanessa, *pro se*, to modify the custody change as "temporary" and remand for new hearing. The Appellate Court found the record was void of evidence warranting a restriction of supervised parenting time. The Appellate Court found David Haracz failed to make a required finding of unfitness, pursuant to 750 ILCS 5/603.10(b). The Appellate Court further found Francesco "misused" the Illinois Domestic Violence Act, 750 ILCS 60/, when a petition for custody should be brought under the Illinois Marriage and Dissolution of Marriage Act (IMDMA). 750 ILCS 5/. The Appellate Court found no best interests' consideration for the unrepresented children, under the statutory "best interest" factors under the IMDMA not used by Francesco, nor the broadly prescribed "in the child's best interest" under the Illinois Domestic Violence Act as there was no finding by David Haracz that Vanessa abused G.P. and J.P. but that Francesco was "harassed" with visitation pursuant to 750 ILCS 60/103(7).

7. Despite the Illinois Appellate Court vacating the plenary order of protection, Vanessa is facing ongoing irreparable harm as she lacks any visitation schedule or parenting time with G.P. and J.P. This order of protection also impacted Vanessa's employment prospects because the order of protection and surrounding litigation surfaces on her

background checks, slandering her character, with G.P. and J.P. listed as "protected parties" to allege a finding of abuse under 750 ILCS 60/103 that is non-existent.

8. When a state shifts custody from one parent to another, the government has implicated a fundamental liberty interest of the parent who loses custody. *B.S. v. Somerset*, 704 F.3d 250, 272 (3rd Cir. 2013). Consistent with firmly established constitutional law, Illinois law entitles a non-custodial parent reasonable visitation absent a finding of unfitness. 750 ILCS 5/602.8(a).

9. This Complaint seeks 1) declaratory relief that Plaintiffs' fundamental constitutional liberty interests to familial integrity, privacy, autonomy, and association were unlawfully totally infringed since 2019 and continue to be infringed by David Haracz in concert with a third-party private actor. Plaintiffs seek 2) injunctive relief to enjoin the ongoing unconstitutional actions taken by David Haracz in his enforcement and policymaking capacity that infringe on their fundamental liberty interest to familial integrity, privacy, autonomy and association. 3) Plaintiffs further seek injunctive relief on behalf of themselves against unconstitutional policies and practices of the Cook County Circuit Court Domestic Relations Division, including those flagrantly used and abused by Defendant Haracz, in concert with private for-profit businesses tied to court "insiders" and officers of the court. 4) Plaintiffs seeks declaratory, injunctive relief and compensatory damages against BRADLEY R. TROWBRIDGE, Executive Director of Safe Travels Chicago, LLC and the Law Offices of Bradley R. Trowbridge, and SAFE TRAVELS CHICAGO, LLC for acting in concert with David Haracz to unconstitutionally infringe on Plaintiffs' procedural and substantive due process rights through an unconstitutional adhesion contract.

4

## II.    JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiffs' claims brought pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.

11. This Court has jurisdiction for all five counts pursuant to 42 U.S.C. § 1983 and pursuant to 28 U.S.C. §§ 1331 and 1343.  All five claims are brought under 42 U.S.C. § 1983.

12. Venue is proper in this district because:

    (a) The Northern District of Illinois is the judicial district in which substantially all the events or omissions giving rise to Plaintiffs' claims occurred; and

    (b) Defendants are found or are employed, at the time of the incidents giving rise to this suit, in the Northern District of Illinois.

13. The typical bars to jurisdiction from federal complaints arising from state domestic relations proceedings do not apply.

14. Absolute judicial immunity does not apply to declaratory relief under 42 U.S.C. § 1983.  Absolute immunity also does not apply to injunctive relief under 42 U.S.C. § 1983 when a state judge acts outside their adjudicatory capacity.    Rather, administrative, policymaking and enforcement actions fall outside a state judge's adjudicatory capacity.

15. Sovereign immunity under the Eleventh Amendment does not apply to prospective relief that does not seek compensatory damages.

16. The Rooker-Feldman jurisdictional bar does not apply because Plaintiffs are not seeking review of an order or judgment.  Their complaint arises from the Illinois Appellate Court vacating an interlocutory order and challenges the unconstitutional

policies and practices of David Haracz and the Cook County, Illinois Circuit Court's Domestic Relations Division.

17. The Domestic Relations exception to federal jurisdiction does not apply because Plaintiffs are not requesting this court to issue a dissolution of marriage decree, enter or alter a child support or custody order, or distribute marital property. The Complaint arises from there being a total lack of a parenting schedule, and a Constitutional requirement there be a parenting schedule.

18. The Anti-Injunction Act 28 U.S.C § 2283 does not apply because 42 U.S.C. § 1983 expressly authorizes injunctions to protect civil rights, and Plaintiffs are not seeking to enjoin the state proceeding. Rather, they seek to enjoin unconstitutional policies and practices taken in excess of the court's jurisdiction and enforced during the proceeding. They further seek to enforce affirmative procedural and substantive obligations derived from vested legal rights.

19. There are no applicable abstention doctrines to bar jurisdiction, including *Younger* because that doctrine does not apply at all to privately initiated domestic relations proceedings. The state is not a party to the ongoing state proceeding, Plaintiffs are not targets of any ongoing state-initiated proceedings, and the post-dissolution proceedings are not quasi-criminal in nature. Moreover, Plaintiffs prevailed in vacating the September 9, 2019 Order in the state appellate court. That the Illinois Appellate Court failed to review some of Plaintiffs' points means an extraordinary circumstances exception to *Younger* applies.

### III. PARTIES

20. Infant Plaintiff G.P., born in August 2008, is the son of Plaintiff, Vanessa Wereko. At all times prior to the actions complained of herein, G.P. resided with Plaintiff, Vanessa, his natural mother in Lake County, Illinois. Pursuant to Federal Rule of Civil Procedure 17(c), Plaintiff G.P. proceeds here by his mother and next friend, Vanessa Wereko.

21. Infant Plaintiff J.P., born in April 2010, is the son of Plaintiff, Vanessa Wereko. At all times prior to the actions complained of herein, J.P. resided with Plaintiff, Vanessa Wereko, his natural mother in Lake County, Illinois. Pursuant to Federal Rule of Civil Procedure 17(c), Plaintiff J.P. proceeds here by his mother and next friend, Vanessa Wereko.

22. Plaintiff Vanessa Wereko ("Vanessa") is the mother and next friend of infant plaintiffs G.P. and J.P. At all times prior to and during the actions complained of herein, Vanessa resided in Lake County, Illinois since relocating from Switzerland in 2014. Vanessa is an American citizen by birth with African heritage, specifically Ghana.

23. Defendant, THE HONORABLE DAVID E. HARACZ, is an Associate Judge in the Cook County Circuit Court's Domestic Relations Division. At all relevant times of the actions complained of herein, Defendant presided over the domestic relations case *In re Marriage of Potenza,* and is responsible for enforcing the Illinois Marriage and Dissolution of Marriage Act ("IMDMA"), the Domestic Violence Act, other Illinois and Cook County laws, and for not infringing on the Constitutional rights of parties and minor children before him. He is sued in his official capacity.

24. Defendant BRADLEY R. TROWBRIDGE operates the Law of Offices of Bradley R. Trowbridge since 2000, which is a law firm specializing in domestic relations law in Cook and other surrounding counties in Illinois. TROWBRIDGE used his career interacting with Cook County domestic relations judges to open SAFE TRAVELS CHICAGO, LLC in 2018, which solicits business from these judges to supervise parents based upon orders from those judges, for profit. TROWBRIDGE acts as a practicing domestic relations attorney and Executive Director of SAFE TRAVELS CHICAGO, LLC simultaneously and uses the contact for his law firm and SAFE TRAVELS interchangeably.

25. Defendant SAFE TRAVELS CHICAGO, LLC is a limited liability corporation registered in Illinois since 2018. SAFE TRAVELS CHICAGO, LLC is a supervised visitation business, which aims to be appointed by state domestic relations judges to supervise as many parents as possible, for profit. BRADLEY R. TROWBRIDGE is the registered agent for SAFE TRAVELS CHICAGO, LLC.

26. At all times relevant to this complaint, Defendant Haracz acted under color of state law, and BRADLEY R. TROWBRIDGE and SAFE TRAVELS CHICAGO, LLC acted jointly in concert with Defendant Haracz.

27. All Defendant's actions have caused severe, including ongoing irreparable harm to Plaintiffs. Vanessa received an undergraduate degree from Dartmouth College in Computer Science, a graduate degree from Northwestern University in Bioinformatics and Computational Biology, has a distinguished career in pharmaceuticals and provides consultative services to global companies and cannot

regain employment and income because the order of protection and surrounding litigation surfaces on her background checks.

28. All Defendants' violations of Plaintiffs' fundamental liberty rights to familial association, integrity, privacy and autonomy are ongoing and give rise to a claim for declaratory and injunctive relief as to which there is no adequate remedy at law.

## IV.   STATEMENT OF FACTS GIVING RISE TO PLAINTIFFS' CLAIMS:

### A. Allegations Of Civil Rights Violations and Unconstitutional Policies and Practices By Defendant and the Cook County Domestic Relations Division

#### 1.  28 Unconstitutional Policies and Practices By Cook County Domestic Relations Courts

29. 1) Fundamental parenting rights are either unconstitutionally denied completely or restricted for prolonged periods of time without a finding of unfitness or endangerment against the targeted parent.

30. 2) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without a motion or petition seeking a finding of unfitness or endangerment.

31. 3) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without notice of motion or petition seeking a finding of unfitness or endangerment.

32. 4) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without full evidentiary hearings required by state law or constitutionally required minimal due process, or post-deprivation hearing rights.

33. 5) Fundamental parenting rights are unconstitutionally infringed by failing to make findings that parenting time with the targeted parent would harm the child(ren), or not be in child(ren)'s best interest.

34. 6) Fundamental parenting rights are unconstitutionally infringed by courts withholding access to child(ren) without due process or findings of unfitness until the parent(s) agree to a restriction when they have committed no offense.

35. 7) Fundamental parenting rights are unconstitutionally infringed by domestic relations court judges exceeding their adjudicatory capacity by issuing orders *sua sponte* without written notice, motion, hearing or finding, thus inserting themselves as a "party" and exercising in an enforcement capacity.

36. 8) Fundamental parenting rights are unconstitutionally infringed by unwritten rules and policies by judges acting as final policymakers exploiting the already vague best interest of the child standard, leaving parents of ordinary intelligence unable to predict what conduct could lead to their fundamental parenting rights to be infringed upon.

37. 9) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time for conduct that would not merit a restriction under any circumstance or standard.

38. 10) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time of innocent parents without due process, and then forcing parents to recover their parenting rights by proving a substantial change in circumstances.

39. 11) Fundamental parenting rights are unconstitutionally infringed by judges entering final custody judgments that "reserve" or completely deny parenting time of innocent

parents with conditions impossible to be satisfied under the standards required to modify a judgment or using an order of protection under the Domestic Violence Act to eclipse any pre-existing allocation judgment under the Dissolution Act.

40. 12) Fundamental parenting rights are unconstitutionally infringed by judges engaging in policymaking by forcing parents not found unfit to engage in prolonged "reunification counseling" that is not authorized by statute or local rules, after their parenting rights were infringed without due process.

41. 13) Fundamental parenting rights are unconstitutionally infringed by judges awarding custody to one parent in a judgment and denying the fit non-custodial parents any rights to parenting time, participate in extra-curricular activities, educational and health records, or to contest a relocation.

42. 14) Fundamental parenting rights are unconstitutionally infringed by state civil enforcement authorities conducting investigations (searches) in domestic relations cases without a statutorily and constitutionally required warrant by any judge or exigent circumstances.

43. 15) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time summarily based upon temporary findings or recommendations of state civil enforcement agencies, and those rights are not restored when those findings are later unfounded and reversed.

44. 16) Fundamental parenting rights are unconstitutionally infringed by judges entering orders of protection under the vague best interest of the child standard or no consideration of the best interest of the child, using the preponderance of the evidence

standard, applying speculative statutory "likely to" not act in a child's best interest on a strict liability basis without any scienter, or due process.

45. 17) Fundamental parenting rights are unconstitutionally infringed by extending emergency orders of protection beyond the statutory limitations without consent or providing a hearing.

46. 18) Fundamental parenting rights are unconstitutionally infringed by extending out in perpetuity orders denying or restricting parenting time "until further order of the court," including beyond statutory limitations without a hearing.

47. 19) Fundamental parenting rights are unconstitutionally infringed solely on the basis of uncorroborated and unsubstantiated hearsay testimony of a party opponent.

48. 20) Fundamental parenting rights are infringed by these courts entering orders without Guardian *ad Litems* conducting statutorily required investigations, including interviewing children and parties and submitting a report for a due diligent deposition.

49. 21) Fundamental parenting rights are unconstitutionally infringed by totally denying parents an opportunity to present a motion and be heard, including after their substantive due process rights have already been implicated.

50. 22) Fundamental parenting rights are unconstitutionally infringed by domestic relations courts failing to maintain a record of their proceedings and denying access to appellate courts by not issuing final orders to the clerk of the court.

51. 23) Fundamental parenting rights are unconstitutionally infringed by domestic relations courts threatening indigent persons with contempt of court for attempting to preserve a record of the proceedings by their own personal recording or to assume the costs of private court reporters despite indigency.

52. 24) Fundamental parenting rights are unconstitutionally infringed by judges refusing to recuse themselves or substitute other judges for cause for violating procedural due process rights and prolonged substantive due process violations as actual judicial bias and prejudice.

53. 25) Fundamental parenting rights are unconstitutionally infringed by judges retaliating and abusing their power against parents who personally object to their constitutionally protected rights and that of their children from being infringed upon or seek recourse permitted by law and by state provisions.

54. 26) Fundamental constitutional rights of expression and speech or infringed by domestic relations courts retaliating against parents who protest these abuse of power practices online or otherwise in public or in open court.

55. 27) Fundamental constitutional rights of parents are infringed when the entire Illinois judicial system closes ranks and covers up their systemic constitutional violations by criminalizing parents and the related minor children rather than remedying it.

56. 28) Fundamental constitutional rights of parents are infringed by state judges acting in concert with private for-profit actors, to force parents to sign private adhesion contracts that further infringe on the parent's fundamental constitutional rights.

57. Since the state dissolution of marriage and custody proceeding began in 2015, nearly every single one of the previously enumerated unconstitutional policies and practices were inflicted on Plaintiffs, sometimes on multiple occasions.

## 2. There Is No Adequate Internal and Structural Supervision Of These Widespread Systemic Violations

58. Domestic relations attorneys are officers of the court, and often act as court-appointed representatives for children. They are an insular group who are aware of unwritten

customs, policies, practices and usages of domestic relations courts that outsiders, particularly *pro se* litigants, would never know. Several of these attorneys are resigned to the unconstitutional policies and practices, tell Plaintiff these violations "happen every day," and that domestic relations judges routinely violate statutes and the constitution. These attorneys are incentivized for these unconstitutional policies and practices to continue because they bill substantially to cause and then remedy these violations. In Illinois, these violations are captured in the thousands. Now domestic relations attorneys are opening up private for-profit businesses to profiteer even more with unnecessary, unwanted and even harmful collateral "services." In 2010, a committee formed by the Illinois General Assembly called POD-1 of the Family Law Study Committee, warned of the burgeoning "cottage industries" surrounding domestic relations courts.

59. The aforementioned constitutional violations are rarely addressed or remedied by the Illinois Appellate courts, and are too numerous and repetitive for Plaintiff to appeal every violation and incur significant attorneys fees. Illinois Appellate courts either lack jurisdiction to hear appeals of interlocutory orders, there is no appeal as of right in most circumstances, or a party requires the consent of the circuit judge to appeal under Supreme Court Rule 304(a). Moreover, circuit courts fail to maintain a recording system to maintain a record, and often issue substantive orders when there could be no foreseeable need for a court reporter with no motion set for hearing, called "status calls."

60. The Illinois Judicial Inquiry Board does not investigate a complaint for at least nine months due to a backlog of complaints. When it does investigate, it usually does not

take any disciplinary action, including public rebukes or admonitions, unless there is a clear criminal violation outside of a judicial capacity. The Judicial Inquiry Board lacks authority to take remedial measures for parents impacted by these violations. The ineptness of the Judicial Inquiry Board was noted in a recent Reuters investigation, in which it acknowledged it completely lost or misplaced hundreds of complaints and those not lost or misplaced rarely transition into any investigation.

61. The Presiding Judge of the Domestic Relations Division leaves final policymaking to individual domestic relations judges, which maintain complete autonomy over their individual courtroom. The presiding judge acts as an administrator and does not conduct supervision to ensure that individual judges are protecting individual constitutional rights. Nor does the Office of Chief Judge, which defers and deflects, directing Plaintiffs to seek "legal advice" or leverage the guide on "Free & Affordable Legal Help in Cook County."

62. The Chief Judge of Cook County selects the Presiding Judge of the Domestic Relations Division and oversees the nomination of associate judges in all divisions, yet likewise does not supervise the Presiding Judge to ensure the division is protecting individual constitutional rights.

63. The entire state judicial system has been compromised by domestic relations attorneys and "cottage industries" of peripheral "professionals" who aid and abet parents intent on infringing on the fundamental rights of the other parent, often with intentionally false allegations. In concert, they promote prolonged, contentious and expensive litigation and countermand the policy objectives of the State of Illinois embedded in

750 ILCS 5/102, which is solely to ensure the children have maximum contact with both parents.

64. Approximately 40 percent of all children are born out of wedlock, and another 50 percent of marriages result in dissolution. Millions of families throughout the country have been thrown into a state system with almost no federal supervision to ensure federal individual rights are protected. The result is systemic wealth extraction by white collar "professionals" that equates to child trafficking, child abuse with children of fit parents being unlawfully seized and sold back to the fit parent with unwanted and actually harmful "services." These parents become dependent on public resources, lose employment or employment prospects due to false and malicious orders of protection, and unnecessarily require state and federal aid.

**B. TIMELINE -- The State Dissolution Proceeding – Plaintiffs' Parenting Time Restricted Or Denied Continuously Since 2019 With No Finding of Unfitness**

**1) Constitutional Violations From 2019-2021 – David Haracz Unconstitutionally Restricts Vanessa's Parenting Time To Supervised Visitation Without A Pleading Seeking Such Relief, and Making No Required Finding of Unfitness To Infringe On Vanessa and her Minor Children's Fundamental Rights.**

65. On September 28, 2016, Francesco filed a petition for dissolution of marriage in Cook County, Illinois.

66. There was a prior dissolution of marriage proceeding initiated in Lake County by Vanessa in 2015 that progressed for over a year then was dismissed by Lake County Judge Joseph Salvi at the start of trial on financial matters, for no apparent reason. In that case, Francesco filed a counter-petition for dissolution of marriage. Vanessa was

a resident of Lake County at all relevant times upon relocating from Switzerland in 2014.

67. An Allocation Judgment for Parental Responsibilities was entered by agreement in the Lake County proceedings and decided what was in the best interests of G.P and J.P. "Allocation of parental responsibilities" is a new term that replaced "custody" and "visitation."

68. The Allocation Judgment established Vanessa as the primary caretaker of G.P. and J.P. and awarded extensive parenting time to Francesco relative to a foreign legal separation judgment from Switzerland following domestic violence incidents.

69. On January 19, 2017, the Circuit Court in Lake County ordered the Allocation Judgment be entered or enrolled in the case in Cook County.

70. Judge Veronica B, Mathein was assigned to the case in Cook County, who retired. The case was then transferred to Judge Raul Vega, who was reassigned out of the Cook County Domestic Relations Division.

71. Judge David E. Haracz (David Haracz) was assigned to the case on December 7, 2017 after Judge Raul Vega's recusal.

72. The Lake County Allocation Judgment was entered by the Cook County Circuit Court on March 7, 2018 on Vanessa's *pro se* motion on December 7, 2017.

73. On May 22, 2018, David Haracz orally ruled to bifurcate the dissolution proceedings and entered a bifurcated judgment of dissolution of marriage on June 21, 2018.

74. All that remained to complete a final dissolution judgment were financial matters, set for trial in August 2018.

75. Vanessa was the primary caretaker of G.P. and J.P. for 11 and 9 years respectively, and an active and engaged mother. She is a scientist by training, a pharmaceutical industry professional who provides consultative services to global companies, with a bachelors and graduate degree from Dartmouth College and Northwestern University in Computer Science, and Bioinformatics and Computational Biology respectively. Vanessa's earned approximately $200,000 in 2017.

76. On or about May 2018, Francesco relocated to the state of Florida before the final hearing on financial matters began.

77. Francesco testified to not notifying Vanessa of his relocation out of state as required by 750 ILCS 5/609.2 and required in the Allocation Judgment.

78. On July 13, 2018 and November 9, 2018, Vanessa filed Verified Petitions alleging Francesco's abuse of parenting time in the Allocation Judgment, pursuant to 750 ILCS 5/607.5 for specified dates prior to and after his relocation, as a pattern of behavior. This included Francesco intentionally missing his scheduled visits.

79. David Haracz continued scheduled hearings on these petitions on July 23, 2018, October 15, 2018, November 26, 2018. On July 15, 2019, a non-court date, Judge Haracz entered an order those motions were no longer set for hearing. At the financial matters trial on December 3, 2019, David Haracz summarily struck these petitions with no evidentiary hearing.

80. On July 16, 2018, Vanessa filed a motion for parenting time for a few select ceremonial family events, pursuant to the Allocation Judgment, to allow G.P. and J.P. time with their maternal grandparents and extended family. David Haracz continued

the calendared hearings on July 23, 2018, October 15, 2018 and November 26, 2018. On July 15, 2019, a non-court date, he denied this motion with no evidentiary hearing.

81. On August 27, 2018 the trial on financial matters started. On August 29, 2018, David Haracz entered a *sua sponte* order to indefinitely suspend the initiated trial.

82. On November 5, 2018, Vanessa filed a Verified Petition for Substitution of Judge for Cause, which alleged racially stereotypical and biased statements by David Haracz to three attorneys about Vanessa, repeat violations of Plaintiffs' procedural due process and protracted proceedings that denied any remedies under the law, as indicative of actual bias and prejudice against Vanessa. Vanessa's Verified Petition recounted her oral request for voluntary recusal before her filing and her complaint to the Judicial Inquiry Board. On November 16, 2018, the Presiding Judge of the Cook County Domestic Relations Division, Grace G. Dickler, assigned Vanessa's verified petition to Judge John T. Carr ("John Carr"), an associate judge, who denied Vanessa's petition without an evidentiary hearing.

83. On December 3, 2018, David Haracz entered an *ex parte* order granting Francesco parenting time in Florida with no antecedent motion and no domicile address provided, as required by law.

84. On December 12, 2018, David Haracz *sua sponte* discharged the Guardian *ad litem* for G.P and J.P., Russell Reid, who was appointed to represent them in February 2017. There was no request that the Guardian *ad litem* be discharged nor had he testified or submitted a written report in the case.

85. On December 31, 2018, two weeks after G.P. and J.P. lost legal representation, John Carr entered an *ex parte* order for their turnover to Francesco, who was then domiciled

in Florida, granting his Emergency Motion for Turnover and holding Vanessa in civil contempt of the December 3, 2018 *sua sponte* parenting time order. A contempt hearing was set for January 28, 2019.

86. On Friday January 11, 2019, David Haracz entered an *ex parte* order granting Francesco's Petition for Immediate Turnover of the Minor Children for Relocation to Tampa, Florida, and entered a writ of body attachment for Vanessa's arrest, which could only be purged with turnover of G.P. and J.P. Vanessa was not served with the resulting order (allegedly mailed), nor this petition, and there was no evidentiary hearing as required by law.

87. On Monday January 14, 2019, G.P. and J.P. were removed by Francesco with four policemen from their elementary school, which they attended since 2014 in Lake County Illinois. This incident was recorded by the Vernon Hills Police Department, No. 19-00001154.

88. On January 28, 2019, David Haracz entered an *ex parte* order granting Francesco's Emergency Motion to Allocate Significant Decision-Making and Temporarily Cease Child Support Payments. Francesco was given, per the entered order, "the authority to enroll the children [in a school] in Tampa" and "this order takes precedence over the Allocation Judgment enroll[ed] 3/7/2018."

89. On January 29, 2019, Vanessa appeared before David Haracz and presented two motions: (1) a January 25, 2019 two-count emergency motion to vacate or reconsider the January 11, 2019 interlocutory order removing the minor children from Illinois and, (2) a January 28, 2019 emergency motion to vacate or reconsider the January 28, 2019 interlocutory order concerning the minor children.

90. On January 29, 2019, David Haracz entered an order giving Francesco 28 days to respond to Vanessa's emergency motions and directed Vanessa to "travel to Florida to pick up the minor children on February 3, 2019" and return them to Illinois, with no pickup location determined. Vanessa was ordered to determine a pickup location from Francesco, who had not shared his domicile address in Florida.

91. On January 29, 2019, David Haracz appointed a Child Representative, Stacey Platt.

92. On February 3, 2019, Francesco did not turnover G.P. and J.P. to Vanessa in Florida.

93. On February 4, 2019, Vanessa filed in the Circuit Court of Hillsborough County, in Tampa Florida, Case No.19-DR-001760, to domesticate the January 29, 2019 Illinois order, and get Tampa law enforcement assistance to find G.P. and J.P.

94. On February 5, 2019, Vanessa filed a Petition for Rule to Show Cause against Francesco in the Illinois case for violating the January 29, 2019 turnover order. On July 15, 2019, a non-court date, David Haracz denied it without an evidentiary hearing.

95. On February 8, 2019, Vanessa returned back to Illinois upon picking up G.P. and J.P. with the assistance of local law enforcement in Florida and re-enrolled G.P. and J.P. in the same elementary school they attended since 2014 in Lake County, Illinois.

96. On April 19, 2019, Judge Jeanne Cleveland Bernstein entered an *ex parte* order granting Francesco's Emergency Motion for Temporary Parenting Time in Illinois, which Vanessa wholly complied with.

97. On May 22, 2019, David Haracz entered an *ex parte* order granting Francesco parenting time on May 23, 2019 and ordered Vanessa to turn over G.P. and J.P.'s passports. On May 23, 2019, Vanessa filed and properly noticed a Motion to Vacate

and/or Reconsider the May 22, 2019 *ex parte* order. The May 22, 2019 order modified the Allocation Judgment, in which Vanessa was the custodian of G.P. and J.P. passports, with no antecedent motion that requested modification of the ordered parenting time.

98. In June 2019, Vanessa filed a Petition Seeking Permission to Relocate with the Minor Children Pursuant to 750 ILCS 5/609.2 and stated a desired relocation date of July 31, 2019 to pursue an employment opportunity in Massachusetts, which was contingent on her ability to relocate. Vanessa relocated to Illinois in 2014 from Switzerland, with no employment opportunity at the time, so G.P. and J.P. could be close to their father. Vanessa's family lives in Massachusetts. When Francesco moved to Florida, there was little reason for Vanessa to stay in Illinois unemployed.

99. Vanessa was entitled to a hearing of her Petition Seeking Permission to Relocate, as calendared for July 1, 2019 in the case.

100. On July 1, 2019, David Haracz incarcerated Vanessa, with no evidentiary hearing on any of her pleadings, claiming she failed to comply with his *ex parte* order of May 22, 2019. Vanessa set her Motion to Vacate and/or Reconsider the May 22, 2019 order for the same court date. Vanessa brought the children's passports to court but wanted to be heard on her motion to vacate and allow facts on record that she is not a flight risk.

101. On July 1, 2019, G.P. and J.P. were again turned over to Francesco by David Haracz for the period of Vanessa's incarceration.

22

102.   On July 1, 2019, a third-party in possession of Vanessa's belongings in court provided the passports of G.P. and J.P. to David Haracz after Vanessa's incarceration. Vanessa was not released from Cook County jail until the evening of July 1, 2019.

103.   On July 2, 2019, Vanessa filed an Emergency Motion to Vacate the July 1, 2019 Contempt Order and to expunge the arrest, set for presentment on July 12, 2019.

104.   On July 12, 2019, on the record, David Haracz stated he read Vanessa's Emergency Motion to Vacate the July 1, 2019 Contempt Order and *sua sponte* chose to deny it without a hearing.  David Haracz then discharged the Child Representative without any party seeking her discharge.

105.   On July 29, 2019, Vanessa obtained a contract in Illinois with a prior employer in the pharmaceutical industry.

106.   On August 1, 2019, two weeks after G.P. and J.P. lost legal representation again, David Haracz entered an Emergency Order of Protection against Vanessa.  David Haracz granted Francesco's *pro se* Emergency Petition for an Order of Protection with no statutorily-required affidavit attached, no specific allegations of abuse, neglect, abandonment or concealment, and no notice to Vanessa at all.

107.   Francesco's Emergency Petition for an Order of Protection generally falsely alleged Vanessa was concealing G.P. and J.P. outside Illinois and denied Francesco unspecified visits pursuant to the Allocation Judgment and unspecified orders entered by David Haracz while in Florida.  Francesco requested "permanent" custody of G.P. and J.P. in a *pro se* emergency petition for order of protection.

108.   On August 22, 2019, G.P. and J.P. were again removed by Francesco with policemen from their elementary school pursuant to the *ex parte* August 1, 2019 order

of David Haracz. On August 22, 2019, Vanessa was served the *ex parte* order of protection, through counsel, only after G.P. and J.P.'s removal. The incident is described in Vernon Hills Police Department Incident No. 2019-00015855

109. On August 29, 2019, with both Vanessa and Francesco represented by counsel, Vanessa presented a Motion to Dismiss the Emergency Order of Protection with a concurrent Demand for Bill of Particulars, and argued the Domestic Violence Act is wrong statute to complain of alleged visitation issues. David Haracz stated: "I find it specific enough." The motion to dismiss was denied, as was the Demand for Bill of Particulars .

110. On August 22, 2019, David Haracz extended the Emergency Order of Protection to August 29, 2019, and then to September 3, 2019 and then to September 9, 2019 in violation of 750 ILCS 60/220. By operation of Illinois statute, the emergency order of protection expired after 21 days. *A.L. v. D.M. (in re A.M.)*, 2013 IL App (3d) 120809, ¶41

111. On September 9, 2019, on the record, David Haracz entered a "plenary" order of protection against Vanessa stating it is "until further order of court," despite the Domestic Violence Act states plenary orders cannot last more than two years. With no finding of abuse of G.P. and J.P., they were named as "protected parties" and Judge Haracz *sua sponte* restricted Vanessa's parenting time to unspecified "weekly" supervised visitation by a third-party, SAFE TRAVELS CHICAGO, LLC, that David Haracz unilaterally selected. Francesco did not even seek a restriction of Vanessa's parenting time in his petition for order of protection.

112. On September 13, 2019, BRADLEY R. TROWBRIDGE, the Executive Director of SAFE TRAVELS CHICAGO and a family law attorney who simultaneously operates The Law Offices of Bradley R. Trowbridge in Chicago, provided Vanessa with a unilateral adhesion contract, with no end date, for her to allegedly "agree" to supervised visitation.

113. The SAFE TRAVELS CHICAGO, LLC "Agreement" is mandatory for supervised parenting time of Plaintiffs, with terms exceeding the restrictions in the September 9, 2019 order. Those terms include requiring Vanessa to "agree" to pay all costs, "agree" to attend with no third-party witnesses, "agree" to non-confidential conversations and restrictions on topics that Plaintiffs can discuss, "agree" to speak "loud" so a supervisor (of unstated qualification) can hear. This supervisor then would write a report directly to David Haracz and opposing counsel on each session, disclosing to David Haracz what Plaintiffs discussed. Moreover, the adhesion contract states that the supervisor cannot be called to testify as a witness, even after submitting *ex parte* communication directly to David Haracz in an ongoing proceeding. *See* Exhibit A.

114. On September 16, 2019, David Haracz' recommendation of SAFE TRAVELS CHICAGO, LLC contributed to another judge, John T. Carr, to order another parent unrelated to Vanessa's case in Cook County, to SAFE TRAVELS CHICAGO, LLC for supervised visitation. *See* Exhibit B.

115. On September 23, 2019 Vanessa timely filed a petition to review the plenary order of protection to the state appellate court, and properly served Francesco via U.S mail and by personal service in open court.

116.   On October 8, 2019, the state appellate court granted Vanessa's petition to review the order of protection, under case number 1-19-1904.  While Vanessa sought review under Illinois Supreme Court Rule 306(a)(5), a permissive interlocutory appeal, she had an appeal by right under Rule 307(a)(1), as an order of protection is considered an injunction.

117.   On October 9, 2019, Vanessa filed a Petition to Stay Enforcement of the September 9, 2019 Order of Protection, with proper notice to Francesco.  David Haracz denied the motion to stay on October 16, 2019.

118.   On October 21, 2019, Vanessa filed an appellant brief for appeal no. 1-19-1904 on the Order of Protection in the Illinois Appellate court, and properly served Francesco using the state's electronic filing system.

119.   On December 3, 2019, David Haracz entered a final dissolution judgment.  Relying on the custody transfer in the Order of Protection, he struck all of Vanessa's pending pleadings, barred her submitted trial exhibits and barred her from testifying by granting Francesco's Motion in *limine* filed a day prior

120.   On December 4, 2019, Vanessa filed a Notice of Appeal of the final dissolution judgment and other prior orders under appeal no. 1-19-2454, pursuant to Illinois Supreme Court Rules 303 and 301.

121.   On December 9, 2019, the Illinois Appellate court dismissed, on its own motion, Vanessa's appeal no. 1-19-1904 on the order of protection, and a request for reconsideration was not successful.  The Appellate Court claimed Francesco was not properly noticed of appellate court filings.

122.   On December 13, 2019, Vanessa's employment contract was terminated.

123. On January 13, 2020, Vanessa filed a Petition for Leave to Appeal the Order of Protection in the Illinois Supreme Court, under Case No. 125651. On March 9, 2020, the Illinois Supreme court denied Vanessa's petition for leave to appeal.

124. On April 3, 2020, Vanessa filed her brief for appeal no. 1-19-2454 and challenged the order of protection and related support order as a step in the procedural progression to the final dissolution judgment.

125. On May 26, 2020, Vanessa filed her reply brief for appeal no. 1-19-2454.

126. On June 16, 2020, when the Circuit Court was shutdown due to the Covid-19 emergency and while the case was still on appeal, David Haracz entered further orders denying Vanessa's pending motions to vacate orders entered after the notice of appeal was filed. He then issued an *ex parte* body attachment for her arrest.

127. On June 25, 2020, Vanessa filed an Emergency Motion for a Supervisory Order pursuant to Rule 383 to the Illinois Supreme Court under Case No. 126124.

128. On July 9, 2020, the Illinois Supreme Court denied Vanessa's Emergency Motion for a Supervisory Order.

129. On July 13, 2020, within thirty (30) days, Vanessa filed a Motion to Quash The Writ of Body Attachment and Vacate Default Orders entered by David Haracz on June 16, 2020. To-date, David Haracz has denied Vanessa an evidentiary hearing.

130. On September 4, 2020, Vanessa, through counsel, filed a Motion to Stay Proceedings while the Illinois Appellate court reviewed her appeal no 1-19-2454.

131. On September 11, 2020, David Haracz conducted the hearing on Vanessa's Motion to Stay Proceedings, and on September 13, 2020 entered an order stating it is continuing Vanessa's motion with no future court date defined.

132. By November 4, 2020, Vanessa's Motion to Stay Proceedings was no longer referenced in David Haracz's order.

133. By January 6, 2021, Vanessa's Motion to Quash Service and Vacate Default Judgments on June 16, 2020 also dropped off David Haracz's continuation orders.

### 2) The Illinois Appellate Court Vacates The Plenary Order of Protection

134. On December 31, 2020, the Illinois Appellate Court entered a Memorandum Opinion and Order. The Illinois Appellate Court, First District, reversed in part the September 9, 2019 plenary order of protection. The Appellate Court found the record was void of evidence warranting a restriction of supervised parenting time. The Appellate Court found David Haracz failed to make a required finding of unfitness, pursuant to 750 ILCS 5/603.10(b) nor inherently applied the best interest factors under the Illinois Marriage and Dissolution of Marriage Act (IMDMA). The Appellate Court further found that Francesco "misused" the Illinois Domestic Violence Act, 750 ILCS 60/, to change custody when he should have petitioned under the IMDMA. 750 ILCS 5/. *In re Marriage of Potenza*, 2016 D 009029, 2020 IL App (1st) 192454-U.

135. The Illinois Appellate court ordered a new hearing on custody under the IMDMA and whether to lift the restrictions imposed on September 9, 2019. However, the Appellate Court left uncertainty on how this will procedurally occur. By vacating the order of protection, there is nothing left to modify. By vacating the order of protection, the allocation of parental responsibilities reverts to the allocation judgment, which gives custody to Vanessa. Vanessa is currently seeking clarification through her January 15, 2021 Petition for Leave to Appeal to the Illinois Supreme Court.

136.  The September 9, 2019 Order of Protection is still effectively operative, despite it being vacated.  The only possibility for parenting time with G.P. and J.P. requires Vanessa sign away her First and Fourteenth amendment rights through the indefinite adhesion contract with SAFE TRAVELS CHICAGO, LLC.  Vanessa continually objected to those terms to David Haracz, on record, who never clarified or modified the September 9, 2019 Order.  The terms of the contract effectively allow David Haracz to surveil and spy on Vanessa, G.P. and J.P. and conduct a form of coerced "opposition research" in order to seek to justify the irreparable harm and Constitutional injury he inflicted on her, G.P. and J.P.  Pursuant to the United States Constitution and Illinois state law, Vanessa is entitled to a reasonable visitation schedule because the Illinois Appellate Court found she was never found to be unfit or an endangerment as a matter of law.  750 ILCS 5/602.8(a).

## V.    CLAIMS FOR RELIEF

### A. COUNT I: DECLARATORY RELIEF THAT PLAINTIFFS' HAVE SUFFERED AND CONTINUE TO SUFFER CONSTITUTIONAL DEPRIVATION TO FAMILIAL ASSOCIATION, INTERGRITY, PRIVACY AND AUTONOMY, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION, AMENDMENT XIV

137.  Plaintiffs incorporate paragraphs 1 through 136 as if fully set forth herein.

138.  Plaintiffs G.P., J.P. and Vanessa Wereko bring this count against Defendant David Haracz in his official capacity under color of state law, acting jointly in concert with Defendant Bradley R. Trowbridge and Safe Travels Chicago, LLC to deprive them of their federal substantive due process rights.

139.  Since September 9, 2019, Vanessa, G.P. and J.P. have not seen each other at all.

140. The adhesion contract of Safe Travels Chicago, LLC, endorsed and abetted by David Haracz, attempts to coerce Plaintiff Vanessa to voluntarily give up her protected First and Fourteenth Amendment rights or not see her children at all, with no due process of law.

141. The Defendants sued in this count are sued for working in concert to completely sever the contact between Plaintiffs, when Vanessa was not found to be unfit or an endangerment, and to profit off this constitutional violation.

142. As a licensed domestic relations attorney, Bradley R. Trowbridge has the knowledge of the law and the duty to ensure he is not an accomplice to violating the Constitution. He has a duty to investigate the text and underlying circumstances of the court's referral for supervised parenting, and to modify the adhesion contract accordingly. Bradley Trowbridge had a duty to investigate whether Francesco misused the Domestic Violence Act, and that the *sua sponte* order for supervised parenting time by David Haracz was void and unlawful.

143. David Haracz caused the violation of Plaintiffs' substantive due process rights from January 2019 to this present date. Bradley R. Trowbridge and Safe Travels Chicago, LLC caused their substantive due process rights to be completely severed from September 9, 2019 to the present date.

144. The United States Supreme Court has repeatedly stated that biological parents and children have fundamental liberty interests to familial association, privacy, autonomy and integrity, and the state cannot interfere unless there is a compelling state interest. Before asserting a compelling state interest, the biological parent must be found unfit, as fit parents are presumed to act in their children's best interest. *Troxel v. Grainville*,

530 U.S. 57 (2000) (referencing *Parham v. J.R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101, *Reno v. Flores*, 507 U.S. 292, 304, 113 S.Ct. 1439, 123 L.Ed.2d 1) Pursuant to state and federal law, non-custodial parents not found to be unfit are entitled to reasonable visitation rights and custodial parents cannot be stripped of custody or their parental rights indefinitely terminated without due process of law. *B.S. v. Somerset*, 704 F.3d 250, 272 (3rd Cir. 2013)

145. David Haracz' order imposing an indefinite order of protection "until further order of the court" attempted to permanently infringe on Vanessa's parenting rights. David Haracz has issued similar orders to other innocent parents, despite Illinois law mandating plenary orders of protection cannot last more than two years.

146. David Haracz' September 9, 2019 Order and Safe Travels Chicago, LLC's adhesion contract for supervised visitation, with no termination date, attempted to seize G.P. and J.P. and sell them back to Vanessa in the form of a perpetual annuity. The terms of the contract incentivize Safe Travels Chicago, LLC to continue the constitutional deprivation as long as possible, including giving reports directly to David Haracz with no opportunity to cross-examine Safe Travels Chicago, LLC staff. This is child trafficking for profit by the court and its favored insiders, jointly in concert together.

147. This count seeks declaratory relief that Plaintiffs' substantive due process rights under the United States Constitution, Amendment XIV have been violated, and continue to be violated.

148. The declaratory relief Plaintiffs seek are authorized by 28 U.S.C. § 2201.

149.  The actions and conduct of the Defendants in this count caused injury to each of the Plaintiffs.

**B. COUNT II: INJUNCTIVE RELIEF TO ENJOIN DEFENDANT HARACZ FROM FURTHER ACTING IN A POLICYMAKING AND ENFORCEMENT CAPACITY TO RESTRICT OR DENY PLAINTIFFS' FUNDAMENTAL FAMILIAL RIGHTS WITHOUT A FINDING OF UNFITNESS, AND TO MANDATE DEFENDANT HARACZ IMPLEMENT A REASONABLE, UNRESTRICTED TEMPORARY PARENTING SCHEDULE CONSISTENT WITH CONSTIUTIONAL AND STATE LAW REQUIREMENTS *INSTANTER***

150.  Plaintiffs incorporates paragraphs 1 through 149 as if fully set forth herein.

151.  Plaintiffs G.P., J.P. and Vanessa Wereko bring this count against Defendant David Haracz in his official capacity under color of state law.

152.  The Supreme Court takes a functional approach to judicial immunity. The touchstone for a judicial act is the performance of the function of resolving disputes between parties, or authoritatively adjudicating private rights.

<u>Unconstitutional Policymaking</u>

153.  When a state court judge oversees unwritten customs and practices that could be written but are not, that judge is deliberately acting in a policymaking capacity. These acts or omissions do not arise out of each judge acting to resolve disputes between parties in court, but are a form of legislating. When these unwritten customs and practices violate the Constitution, the judge is liable to injunctive relief under 42 U.S.C. § 1983. In this circumstance, the state actor cannot point the finger at a private party who may approve of the relief, the court is the moving force of the deprivation.

154.  Cook County domestic relations judges have enormous autonomy to make their own policies, and are given a broad grant of authority to operate independently within their courtroom. The best interest of the child standard is inherently amorphous and

32

vague, and is almost always an exercise in policymaking. As a practical matter, there is no authority which constrains the final policymaking of domestic relations judges, given the enormous cost and effort required to remedy a single violation. There is often no written record to appeal. Interlocutory orders are not subject to any meaningful review. Since federal courts often abstain (wrongly), refuse to modify a custody decree or review a state court order that is unconstitutional, there is virtually no federal oversight. There is almost no state-level supervision as well.

155. David Haracz was and continues to be policymaking by claiming a domestic relations judge can restrict a parent's fundamental rights without being found to be unfit. That is unconstitutional and there is no compelling governmental interest as held by the United States Supreme Court. Accordingly, this facially unconstitutional policy and practice must be enjoined.

156. David Haracz was and continues to be policymaking when he entered an emergency order of protection against Plaintiff Vanessa, on September 9, 2019. Even if the facts David Haracz alleged were true, in which he rendered his judgment with a prepared ten-minute statement, five minutes after the ending of closing argument, he does not have policy-making authority to transfer custody in an order of protection. He also does not have policy-making authority to restrict visitation when Francesco did not ask for it.

157. 750 ILCS 5/102 of the Illinois Marriage and Dissolution of Marriage Act states it is the public policy of Illinois that children of divorced parents have maximum contact with both parents. That David Haracz contravened that policy with his own unwritten policy and practices for over three years in the case is itself a violation of public

33

policy. Restrictive gatekeeping is a pathological condition that afflicts men and women, in which they try to remove another parent completely. It is closely associated with narcissistic and borderline personality disorder. Courts, its officers and other "cottage industries" surrounding these courts have converted this pathology into a money-making enterprise, which is highly damaging to children. Defendant's policy of flippantly violating constitutional rights of many parents systemically without a finding of unfitness countermands 750 ILCS 5/102, violates fundamental constitutional rights and is a practice that is void as to public policy. Accordingly, this policy must be enjoined.

<u>Unconstitutional Enforcement Actions</u>

158. When a state court judge enters an order *sua sponte* in a civil proceeding without a justiciable question properly presented before the court, that judge violates a party's procedural due process rights and exceeds their jurisdiction. The state court judge is acting outside of his adjudicatory capacity. Rather, that judge is deliberately acting in an enforcement capacity, as if he or she is a prosecutor and party to the case. When the state court judge's order violates substantive due process rights or deviates from statutory limitations, they are liable to injunctive relief under 42 U.S.C. § 1983. In this circumstance, the state actor cannot point the finger at a private party who may approve of the relief, the court is the moving force of the deprivation.

159. On September 9, 2019 and in prior interlocutory orders, David Haracz *sua sponte* entered orders, including ordering supervised visitation for Vanessa that Francesco did not even ask for. Francesco only wanted a transfer of custody. David Haracz was acting in an enforcement capacity, as if he was a party to the case. He stepped out of

his role as a neutral adjudicator between two private parties and effectively became a prosecutor and party to the case. That this violation continues entitles Vanessa, G.P. and J.P to injunctive relief against David Haracz.

Prayer For Injunction

160. The Defendant David Haracz sued in this count is sued for his actions taken under color of state law.

161. This count seeks emergency temporary, preliminary and a permanent injunctive relief that the aforementioned policymaking and enforcement actions by David Haracz violates the Due Process Clause of the United States Constitution, Amendment XIV.

162. The injunctive and declaratory relief Plaintiff, Vanessa Wereko, seeks against the continued separation of her natural children from her care and custody is authorized by 28 U.S.C. § 2201 and Fed. R. Civ P. 65.

163. Pursuant to Fed. R. Civ. P. 65, Plaintiffs states that:

    a. As a result of the unconstitutional policymaking and enforcement actions by Defendant, Plaintiffs are being irreparably injured and their substantive due process rights are being violated;

    b. Plaintiffs are likely to prevail on the merits of their claim to basic rights to familial association, autonomy, privacy and integrity, without any finding of unfitness, as a protected constitutional right; and

    c. There is no adequate remedy at law.

164. As relief under this Count, Plaintiffs seek the following temporary, preliminary, and permanent injunctive relief:

a. A temporary, preliminary and permanent injunction against Defendant continuing to violate their substantive due process rights with unconstitutional policymaking and enforcement actions.

b. A mandatory injunction that Defendant David Haracz enter an unrestricted, temporary parenting schedule for Vanessa, G.P. and J.P immediately, pursuant to their vested right under the United States Constitution and 750 ILCS 5/602.8(a).

165. The actions and conduct of the Defendant David Haracz in this count caused injury to each of the Plaintiffs.

**C. COUNT III: DECLARATORY AND INJUNCTIVE RELIEF TO ENJOIN THE ADHESION CONTRACT BY BRADLEY R. TROWBRIDGE AND SAFE TRAVELS CHICAGO, LLC IN REGARDS TO PLAINTIFFS AND ALL PERSONS SIMILARLY SITUATED AS VIOLATING THEIR PROTECTED FIRST AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS**

166. Plaintiffs incorporates paragraphs 1 through 165 as if fully set forth herein.

167. Plaintiffs G.P., J.P. and Vanessa Wereko bring this count against Defendants Bradley R. Trowbridge and Safe Travels Chicago, LLC., and on behalf of all persons similarly situated as Plaintiffs.

168. The adhesion contract by Bradley R. Trowbridge and Safe Travels Chicago, LLC violates Plaintiffs' constitutional rights, *inter alia*, by contractually imposing costs not provided for in the court order, barring third-party witnesses from supervision sessions, and providing *ex parte* communication directly to David Haracz without opportunity for cross-examination, with unlimited duration. *See* Exhibit A.

<u>Prayer For Injunction</u>

169.   The Defendants sued in this count are sued for actions taken jointly in concert with David Haracz under color of state law.

170.   This count seeks emergency temporary, preliminary and a permanent injunctive relief against the aforementioned adhesion contract imposed by the named Defendants that violates the Due Process Clause of the United States Constitution, Amendment XIV and Amendment I.

171.   The injunctive and declaratory relief Plaintiffs seek against the adhesion contract authorized by 28 U.S.C. § 2201 and Fed. R. Civ P. 65.

172.   Pursuant to Fed. R. Civ. P. 65, Plaintiffs states that:

d.   As a result of the adhesion contract, Plaintiffs are being irreparably injured and their substantive due process rights are being violated;

e.   Plaintiffs are likely to prevail on the merits of their claim as a protected constitutional right; and

f.   There is no adequate remedy at law.

173.   As relief under this Count, Plaintiffs seeks the following temporary, preliminary, and permanent injunctive relief:

a.   A temporary, preliminary and permanent injunction against the unconstitutional terms in Defendants' adhesion contract, barring their inclusion in any contract and barring their enforcement.

174.   The actions and conduct of the Defendants in this count caused injury to each of the Plaintiffs.

**D. COUNT IV: COMPENSTORY DAMAGES BY BRADLEY R. TROWBRIDGE AND SAFE TRAVELS CHICAGO, LLC FOR ACTING IN CONCERT TO VIOLATE PLAINTIFFS' FIRST AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS**

175. Plaintiffs incorporate paragraphs 1-174 as if fully set forth herein.

176. Plaintiffs G.P., J.P. and Vanessa Wereko bring this count against Defendants Bradley R. Trowbridge and Safe Travels Chicago, LLC., for acting in concert with David Haracz to violate their constitutionally protected rights.

177. The named Defendants in this count caused an unconstitutional adhesion contract be imposed on Plaintiffs that violates their Constitutional rights without due process of law.

178. Plaintiffs G.P. and J.P. have suffered irreparable emotional harm due to not being able to see their mother, who was their primary caretaker since they were born.

179. Plaintiff Vanessa Wereko has suffered economic damages from loss of income, and pain and suffering from the loss of her constitutionally protected relationship with G.P. and J.P.

180. The unconstitutional adhesion contract by Defendants Bradley R. Trowbridge and Safe Travels Chicago, LLC caused a total lack of contact between Plaintiffs from September 9, 2019 to the present.

181. Plaintiffs seek compensatory damages and losses in an amount of at least $500,000 for each minor child and at least $1,500,000 for Plaintiff Vanessa.

**E. COUNT V: DECLARATORY AND INJUNCTIVE RELIEF TO ENJOIN THE COOK COUNTY DOMESTIC RELATIONS DIVISION FROM SYSTEMICALLY VIOLATING THE FUNDAMENTAL CONSTITUTIONAL RIGHTS OF PLAINTFFS AND PARENTS AND CHILDREN SIMILIARLY SITUATED WITH UNWRITTEN, UNLAWUL AND CONSTITUTIONAL POLICIES, PRACTICES, USAGES AND CUSTOMS, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE**

**UNITED STATES CONSTITUTION, AMENDMENT XIV AND AMENDMENT I.**

182. Plaintiff incorporates paragraphs 1 through 181 as if fully set forth herein.

183. Plaintiffs and those similarly situated bring this Count against Defendant David Haracz in his official capacity under color of state law, and by extension, the Cook County Domestic Relations Division as an entity.

184. Plaintiffs have been exposed to several domestic relations judges, including the Presiding Judge, all conscious of the case history but perpetuating the culture of silence of parents and minor children victimized by the unconstitutional unwritten policies and practices of the Cook County Domestic Relations Division. The violations are too extensive to be enumerated in this space and are devastating financially, emotionally and professionally.

185. The State of Illinois' judiciary has effectively teamed up with insider officers of the court to make money in side businesses tied to their law practice, which is a massive conflict of interest and is inherently corrupt.

186. Online forums are a reservoir where thousands of parents complain about similar constitutional violations that occurred to them. *See, e.g*, "Parental Rights and Due Process" in 1 THE JOURNAL OF LAW AND FAMILY STUDIES, 2:123-150 (1999) (noting the widespread violation of due process in the family law context)

187. These 29 violations are longstanding and well-known by the state actors supposed to supervise and prevent these abuses, who have knowingly failed to stop these practices.

### Prayer For Declaratory Relief And Injunction

188.  The Defendant sued in this count are sued for actions taken by the Cook County Domestic Relations Division as an entity under color of state law.

189.  This count seeks declaratory, and emergency temporary, preliminary and a permanent injunctive relief that the aforementioned unconstitutional policymaking and enforcement actions by the Cook County Domestic Relations Division violates the Due Process Clause of the United States Constitution, Amendment XIV and Amendment I.

190.  The injunctive and declaratory relief Plaintiffs and others similarly situated seek are authorized by 28 U.S.C. § 2201 and Fed. R. Civ P. 65.

191.  Pursuant to Fed. R. Civ. P. 65, Plaintiffs states that:

    g.  As a result of the unconstitutional policymaking and enforcement actions by the Cook County Domestic Relations Division, Plaintiffs and others similarly situated are being irreparably injured and their substantive due process rights are being violated.

    h.  Plaintiff is likely to prevail on the merits of their claim there are widespread, systemic and at least 29 concrete unconstitutional policies and practices by the Cook County Domestic Relations Division are enforced.

    i.  There is no adequate remedy at law.

192.  As relief under this Count, Plaintiff seeks the following temporary, preliminary, and permanent injunctive relief:

    a.  A temporary, preliminary, and permanent injunction against the Cook County Domestic Relations Division continuing to violate the constitutional rights of

parents with unwritten, unconstitutional policies and practices, jointly in concert with private actors and officers of the court.

193. The actions and conduct of the Defendant in this count caused injury to each of the Plaintiffs and other parents and children similarly situated.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs G.P., J.P. and VANESSA WEREKO respectfully request that this Court enter the following judgments and awards on behalf of Plaintiffs:

(a) A declaratory judgment in their favor on counts I-V.

(b) An emergency temporary, preliminary and permanent injunction in their favor on counts II-III.

(c) An emergency temporary, preliminary and permanent injunction in their favor on count V, but this count be stayed pending filing of other complaints to be consolidated and potentially certified as a class.

(d) Compensatory relief against BRADLEY R. TROWBRIDGE and SAFE TRAVELS CHICAGO, LLC for economic and non-economic damages including pain and suffering and loss of consortium pursuant to Count IV.

(e) Such other relief as this Court deems just and equitable.

Dated:  March 1, 2021

RESPECTFULLY SUBMITED:

_____

VANESSA WEREKO
P. O. Box 5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Fax No.: 847-450-0002
Email: werekovb@me.com

## <u>VERIFICATION</u>

I, VANESSA WEREKO, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.
2. I have personal knowledge of the facts and allegations, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify to the matters stated herein.
3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning the entire subject matter are true and correct.  28 U.S.C. § 1746.

Executed on March 1, 2021.

VANESSA WEREKO
P. O. Box 5035
Vernon Hills, IL 60061
Main No.: 847-637-7142
Fax No.: 847-450-0002
Email: werekovb@me.com

# EXHIBIT A

(5 pages)

# Safe Travels

September 13, 2019 at 4:36 PM

From Brad Trowbridge

To Francesco Potenza, VANESSA WEREKO, tania@dimitrovalaw.com, Andrea D-541-11 Rice

📎  🗋 Intake.pdf 92.04 KB,  🗋 FAQs.pdf 125.73 KB,  🗋 Agreement.pdf 192.57 KB

All

I am the Director of Safe Travels. I received a referral order from Judge Haracz. I also got a call from Mr. Potenza. As I explained to Mr. Potenza, we currently only have space available on Sundays. I also have attached an Intake Form, Agreement, and a Frequently Asked Questions sheet.

Please let me know if you have any questions.

Thanks
Brad

**Brad Trowbridge**
**The Law Offices of Bradley R. Trowbridge**
**3257 N. Sheffield Suite 104**
**Chicago, IL 60657**
**P: 773-784-9900**
**E: brad@bradtrowbridge.com**

**PRIVACY AND CONFIDENTIALITY NOTICE**
The information contained in this communication is confidential and may be legally privileged. If you are not the intended recipient you are notified that any disclosure, copying, distribution or taking action based on the contents is strictly prohibited. If you received this communication in error, please immediately notify us at (773) 784-9900.

# SAFE TRAVELS CLIENT AGREEMENT

By signing this Agreement, you acknowledge that you read, understand, and agree to be bound by the terms of this Agreement.

1. Safe Travels supervisors will provide services per the terms of a court order. However, Safe Travels reserves the right to deny or terminate services for any reason Safe Travels' staff deems necessary.

2. Initiating Services: Services begin with an intake interview of each party and each child of the parties. The intake fee for the intake interview process is $250, must be paid in advance, and is non-refundable. If the case is accepted by Safe Travels, supervised parenting time is scheduled.

3. Parenting Time Rules:

    A. Parenting time is scheduled based on the availability of the supervisor, the parents, and the child(ren). The supervisor decides the location and start time of parenting time based on that information;

    B. Clients are charged $75 per hour for supervised parenting time for one parent and one child, and $15 per hour for each additional child. Parenting time must be scheduled for a minimum of two hours, but it can be longer if Safe Travels staff is available. All supervised parenting time must be paid in advance of the scheduled parenting time. Parenting time must be canceled by email at info@safetravelschicago.org. If the parenting time is canceled by either parent by email 24 hours in advance, the payment is returned. There is no refund for any parenting time canceled less than 24 hours in advance of the scheduled parenting time, or for any parenting time session missed, except in the case of a child's illness. In such cases, if a doctor's note is provided to Safe Travels, the payment for the supervised parenting time affected by the illness is returned. There also is no "make up" time. If either parent is late for the start of parenting time, the parenting time still ends at the scheduled time;

    C. The supervised parent must pay for all costs of a supervisor's admission into an event or entertainment establish;

    D. Safe Travels staff may be available to provide services during holidays. Check for availability and rates;

    E. Safe Travels will cancel or end any parenting time session if the parent—in the opinion of the supervisor—appears to be under the influence of a substance, may pose a physical or emotional risk to a child, or behaves erratically. As such, no parent is allowed to discuss with a child the litigation or the other parent in a derogatory manner. In addition, no parent is allowed to discuss litigation or the other parent during the parenting time;

    F. An adult must accompany the child(ren) to the designated exchange location. Exchanges of the child(ren) are coordinated so the parties do not interact with one another;

    G. No weapons are allowed to be in the possession of anyone during the supervised parenting time. No physical discipline shall be used by anyone participating in supervised parenting time. Verbal threats, vulgar or abusive language directed toward anyone present during supervised visitation is not permitted. Any threats of physical violence to anyone present during the supervised parenting time, or any implied threat of kidnapping, will be taken seriously and will result in summoning of law enforcement officers;

    H. Only parties identified by court order are allowed to be present during supervised parenting time. No additional family members, significant others, or friends are allowed to be present unless they are listed by name on the court order;

    I. The supervisor will try to be as discreet as possible to allow the supervised parent to have a relaxed experience with his/her child(ren). However, all dialogue between the parent and the

child(ren) must be loud enough for the supervisor to hear. The supervisor must be able to see the child(ren) at all times. If the parent does not adhere to the rules of supervised parenting time outlined herein, the supervisor will terminate the parenting time immediately;

J. The supervised parenting time is not confidential. A brief written report is provided to the court and all attorneys of record after each supervised parenting time session. A supervisor also may be called to testify about what he/she observed or heard during supervised parenting time;

K. Supervisors are unarmed. They are not trained nor expected to intervene in moments of danger to anyone participating in supervised parenting time. A guaranty that no harm will occur during such court ordered supervised parenting time through Safe Travels is neither inherent nor implied, and while every precaution short of physical intervention will be taken to secure the child(ren) or adult's safety, it cannot be guaranteed. In the event of an emergency, child(ren) may be transported to a safe place until such time as an appropriate custodian can be contacted; and

L. Safe Travels reserves the right to amend this Agreement in writing if it determines additional safeguards are needed for any particular case.


_____        _____
Parent                                                                  Date


_____        _____
Parent                                                                  Date


_____        _____
Safe Travels Staff                                                 Date

# FAQs about *SAFE TRAVELS*

**What is *Safe Travels?*** *Safe Travels is a private agency that provides supervised parenting time as ordered by the Cook County, Illinois courts.*

**Who supervises the parenting time at *Safe Travels?*** *Every supervisor at Safe Travels has earned, at a minimum, a Master's degree in social work, education, or a similar field of study. They also have had training in important areas, including child development, domestic violence, and substance abuse. They are trained to notice subtle reactions in children that the average parenting time supervisor may not notice.*

**Where does supervised parenting time occur?** *It can take place anywhere except a private home. It can take place in Safe Travels' office, the park, a museum, the zoo, a restaurant, an arcade, or almost anywhere else. However, the specific location is set by Safe Travels based on the date and availability of supervisors.*

**What fees are associated with *Safe Travels'* services?** *There is a non-refundable intake fee of $250 for every case. The intake includes interviewing each parent and each child. If the case is accepted, the supervised parenting time session fee is $75 per supervised parenting hour for one parent and up to two children. It is $90 per supervised parenting hour for one parent and more than two children. Each session is 2-3 hours.*

**When are fees due?** *The intake fee is paid at the time of the intake. All parenting time sessions must be paid 48 hours in advance of the scheduled parenting time.*

**What is *Safe Travels'* cancellation policy?** *If the parenting time session is canceled by either parent by email 24 hours in advance, the payment is returned or applied to the next session. There is no refund for any parenting time canceled fewer than 24 hours in advance of the scheduled parenting time session or for any parenting time session missed. There also is no "make up" time. If either parent is late for the start of a session, the session still ends at the scheduled time.*

**What are *Safe Travels'* rules?** *Each parent will be required to sign Safe Travels' Agreement. The rules are contained in the Agreement. Most importantly, Safe Travels will cancel or end any parenting time session if the parent—in the opinion of the supervisor— appears to be under the influence of a substance, may pose a physical or emotional risk to a child, or behaves erratically. As such, no parent is allowed to discuss with a child the litigation, the judge, the attorneys, or the other parent in a derogatory manner. No parent is allowed to interrogate a child about the other parent or encourage a child to reveal information about the other parent.*

**Will *Safe Travels* submit a report?** *Safe Travels will submit a short, general report to the court and the attorneys of record after each session.*

**Will *Safe Travels* supervisors testify in court?** *No. By accepting services from Safe Travels, each parent waives his/her right to call any person affiliated with Safe Travels to testify.*

**Is *Safe Travels* available on holidays?** *It's possible. It depends on the availability of supervisors and the number of clients already scheduled. Ask about the fees for such sessions in advance.*

# EXHIBIT B

(4 pages)

 **Tania Dimitrova <tania@dimitrovalaw.com>**

---

## Supervisors on Mazzone as of 9-16-2019
1 message

---

**Tania Dimitrova <tania@dimitrovalaw.com>** Mon, Sep 16, 2019 at 7:23 PM
To: Mary T <wesseldohenylaw@aol.com>, James flood <jamesfloodlaw@sbcglobal.net>
Bcc: olenkamazzone@yahoo.com

Mary,

Please see attached which includes supervisors options that I have researched for Mazzone. I spoke to Amy Wilder, Elaine Hall, and Safe Travels (brad) today to obtain more info. Please send me your thoughts on the possible supervisors. I also don't know the children's schedules so it is difficult for me to narrow down possibilities. I will forward you the pamphlets/brochures mentioned in the attachment via separate email.

Regards,

Tania Dimitrova, Esq.
Law Offices of Tania Dimitrova, LLC
8 S. Michigan Ave., Ste 1300
Chicago, IL 60603
Office: 312-488-9529
Mobile: 312-890-6855
Fax: 312-380-0378

 **Mazzone-Supervisors Options as of 9-16-2019.docx**
17K



Mary,

**Amy Wilder:** I was able to speak to Amy Wilder today to discuss supervised visits for Olga. Amy mentioned to me that she received a voicemail from you as well and stated that she would give you a call back. Amy Wilder offers supervised visits and therapeutic sessions. She suggests that the parties and children begin with therapeutic visits which occur at her office. She charges $90 per session for in office therapeutic visits. Her office is located at 2025 S Arlington Road Ste 112 Arlington Heights, IL. Amy has flexible hours during which she can accommodate the parties for visits. She is also open on Saturdays from 8 am until she is finished with her last client. Amy also offers supervision for parents to take place at a park, parents home, etc. However, she suggested beginning parenting time with a therapeutic setting. Please let me know if you have had a chance to speak to her.

**Elaine Hall with Mary and Tom Leo Associates, Inc.:** I also reached out to additional supervisors today to make sure that we select the right individual for the parties. I spoke to Elaine Hall who works with Mary and Tom Leo and Associates. Elaine is a MSW and also offers therapeutic parenting time sessions as well as eventual supervised parenting time to take place at a parents home, park, public setting...etc. Like Amy, Elaine felt that it would be best for the parties to begin parenting time sessions at her office where therapeutic visits can take place. She would either do the sessions herself or would assign one of her team members for the parties. Elain stated that more than likely she would be the person involved on this matter since I received a direct referral to her.

In order to begin the program, the parties would need to participate in an intake and a mental health assessment. The therapeutic sessions cost $135 per session. No additional charge is required for the assessment/mental health evaluation. Elaine can work with the parties to set up a regular schedule. She has also provided me with an informational brochure detailing the program which I will forward to you as well as their website which is found below. Elaine's office is located at

**Mary and Tom Leo Associates, Inc.**
**2656 W. Montrose Ave. - Ste. 2E**
**office phone #: (773) 267-5795**
**fax #: (773) 267-4787**
**mtlainc.com**

You can email Elain directly at ehall@mtlainc.com or call the number above to speak to her. I have not previously used Elain but Russell Reid swears by her and says she is really good at handling cases like this. I also looked up the other team members at this agency and most are either a MSW/LCPC/PSY.D/LCSW..etc. and should all be highly qualified.

**Safe Travels:** Judge Haracz referred this program to me. I spoke with Brad Trowbridge who is the program director earlier today. Safe Travels offers supervised parenting time for parties but does not offer therapeutic sessions. Supervised parenting time can occur at a parent's home or another child friendly setting. All of the supervisors that work with Safe Travels possess at least master's degree in

social work, education or a similar field. Safe Travels requires an intake where each parent and child is interviewed prior to accepting the assignment. Intake is $250. If the case is accepted, Safe Travels charges $75 per hour for supervised parenting time. Parenting time sessions are between 2-3 hours. Brad said that he currently has availability every week on Sundays. His telephone number and contact info is provided below. I am also going to forward you an email with the intake form the parties must fill out, the FAQs sheet I preciously emailed you and the Safe Travels agreement.

Brad Trowbridge
The Law Offices of Bradley R. Trowbridge
3257 N. Sheffield Suite 104
Chicago, IL 60657
P: 773-784-9900
E: brad@bradtrowbridge.com

**OTHER OPTIONS: Mentioned in September 6, 2019 e-mail:**

1.) Branch Family Institute located at 11111 S. Western Ave Chicago, IL

They charge $80 for intake and $55 per hour for supervised visits to take place at the agency location. I spoke to Ms. Thompson who gave me the email address for her supervisor jcook@embranch.org. The agency has flexible hours and they are open 7 days a week. Both parents must call to sign up. They require a copy of the supervised visitation order and a copy of the order of protection.

https://thebranchfamilyinstitute.org/

773-238-1100

2.) Stefania de Manaco-Illinois Safe Exchange- Stefania would conduct supervised visits at an approved family friendly location including park, movies, a parent's home...etc. She charges $90 per hour but told me that she would be willing to go down to $70 per hour. She does not charge for travel to and from the supervised visitation site. Parties are also required to participate in an intake interview which costs $150.00. Stefania told me that she has availability for visits every Friday after 2:00 p.m. and on alternating Saturday and Monday. Stefania would require a copy of a court order for supervised visitation, a copy of the order of protection, and copies of any police reports filed within the last 24 months involving the children and the parent receiving supervised visitation.

312-927-7968

illinoissafeexchange@gmail.com

3.) Mujeres Latinas- 773-890-7683 Daisy Sotto

Daisy@mujereslat.org

Mujeres Latinas offers visits for up to 1.5 hours per day.  They are free of charge for the parties and are located at 4700 S. California Ave Chicago IL. Visits take place at the facility.  Mujeres requires an intake interview for both parents.  They also require a court order for visitation and a copy of the order of protection.